# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 13-cr-157 (MJD/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Dean Boraas, | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Defendant Dean Boraas' Motion to Suppress Eyewitness Identifications (ECF No. 19), Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 20), and Motion to Suppress Statements, Admissions, and Answers (ECF No. 21).[1] The Court held a hearing on the motions on September 5, 2013. Assistant United States Attorney Clifford B. Wardlaw appeared on behalf of the United States of America, and Assistant Federal Public Defender Douglas Olson appeared on behalf of Defendant Dean Boraas. The reasoning for the Court's rulings is set forth below.

Defendant Dean Boraas ("Boraas") was indicted on June 18, 2013, with one count of theft of government funds, in violation of 18 U.S.C. § 641. At the September 5, 2013, hearing, the Government called Randy Rupp, Special Agent of the Office of the Inspector General of the U.S. Department of Veteran Affairs to testify. The Government also offered the following exhibits into evidence for the limited purpose of the suppression hearing: Government Exhibit 1—a copy of Rupp's memorandum of interview, recorded after he met with Boraas; Government

---

[1] Boraas' nondispositive motions will be addressed in a separate Order.

Exhibit 2—a letter that Boraas handed to Rupp when the two met; and Government Exhibit 3—a handwritten sworn statement Boraas made during his meeting with Rupp.

The parties agreed that Boraas' Motion to Suppress Eyewitness Identifications and Motion to Suppress Evidence Obtained from Search and Seizure were rendered moot by Government disclosures and the testimony at the hearing. Therefore, this Court will focus on Boraas' remaining motion.

I.  **Boraas' Motion to Suppress Statements, Admissions, and Answers**

Boraas moves to suppress three statements, all from October 20, 2010. The first statement is the content of his conversation with Rupp and Rupp's fellow agent, James Werner. The second statement is contained in a typewritten document he handed to Rupp when he met with Rupp and Werner. The third statement was handwritten by Boraas near the close of the interview.

A.  **Facts**

The U.S. Department of Veterans Affairs' ("VA") investigation of Boraas began in 2009 or 2010. In August 2010, Rupp visited Boraas' home in Scandia, Minnesota, and attempted to make contact, but Boraas was not present. After learning that Rupp had visited his home, Boraas called Rupp and they arranged to meet in Branson, Missouri, near where Boraas was living at the time.

Boraas met with Rupp and Werner in a hotel lobby. Rupp and Werner were dressed in business-casual attire and did not display weapons. The lobby was public, with hotel foot traffic passing through during the interview. When Boraas arrived, he, unprompted, handed Rupp a typewritten document. The document detailed information about Boraas' personal life and the VA benefits in question.

As the interview started, the agents did not read Boraas a *Miranda* warning because they

deemed the interview non-custodial. Boraas was not handcuffed, and his freedom of movement was not restricted in any way. The interview spanned approximately 45 minutes, during which Boraas was calm, polite, and answered questions fully. As the interview concluded, Rupp asked Boraas to complete a handwritten statement on a VA form. Boraas agreed and executed a brief handwritten statement. At the end of the statement, the form language provides that no threats, promises, pressure, or coercion were used to obtain the statement. After the interview concluded, Boraas left. The agents did not record the conversation, but Rupp prepared a memorandum following the interview.

      **B.    Discussion**

A person "must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time that a person is taken into custody for questioning." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990). A suspect is "in custody" for purposes of *Miranda* upon arrest, or when the suspect is "deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *United States v. Axsom*, 289 F.3d 496, 500 (8th Cir. 2002). The Government concedes that Boraas was interviewed by the agents on October 20, 2010, and that he was not advised of his *Miranda* rights. Thus, the question is whether the interview was conducted in a custodial setting.

In making this determination, the Court considers the totality of the circumstances surrounding the interview and whether a reasonable person in Defendant's position would have felt free to end the questioning and leave. *See United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). The Eighth Circuit Court of Appeals has enumerated several indicia of custody to aid courts in assessing an individual's custodial status:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F.2d at 1349.

Regarding the interrogation in the lobby, Boraas initiated the meeting after Rupp visited Boraas' home in Minnesota. During the interview, he spoke willingly with the agents, providing full and responsive answers. The men were seated in the chairs of a hotel lobby, with the public traversing the area. His movement was not restrained during the interview, no coercive or deceptive tactics were employed, and the atmosphere was not dominated by the two agents. The interview was relatively brief, lasting 45 minutes. Boraas was not arrested and simply left at the end of questioning. Each of these circumstances weighs against suppression.

Favoring suppression, however, is that no evidence indicates that Boraas was informed that he was free to leave. When this omission is viewed in the context of the other factors, however, the Court is persuaded that Boraas knew he was free to leave and instead chose to cooperate fully. Having considered all of the circumstances of the October 20, 2010, interview, the Court concludes that a reasonable person in Boraas' position would not have felt restrained to the degree associated with a formal arrest. Accordingly, the content of the lobby interrogation should not be suppressed.

With respect to the typewritten statement that Boraas handed to the agents prior to the interview, it too should not be suppressed. The agents did not request that Boraas prepare such a statement, had not yet discussed the investigation in depth with him, and had not yet started their

interview. In fact, Rupp described being surprised when Boraas handed Rupp the statement. Thus, the elements of interrogation and custody were both lacking. The typewritten statement was voluntary and non-custodial and therefore should not be suppressed.

Finally, this Court examines the handwritten statement, which Boraas prepared near the close of the interview. This statement also survives the suppression motion. Near the end of the interview, Rupp asked Boraas if he wanted to complete a handwritten statement. Boraas agreed to, and completed the statement on a VA form document. Boraas presented no evidence that the agents employed strong-arm tactics to obtain this statement. Boraas wrote the statement in an open, public area with no doors or other physical objects preventing his departure. Boraas' expressed and implied cooperation with the investigation bolsters the Government's claim that the handwritten statement was voluntarily provided and was not a result of Boraas feeling dominated by the agents' presence. Moreover, the form language of the sworn statement provides that Boraas made the statement "freely and voluntarily" and that no threats, promises, pressure, or coercion were used to obtain the statement. Because the statement was executed in such a context that a reasonable person would have felt free to leave, the setting was not custodial. Therefore, Boraas' handwritten statement should not be suppressed.

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Dean Boraas' Motion to Suppress Eyewitness Identifications (ECF No. 19) be **DENIED AS MOOT**.

2. Dean Boraas' Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 20) be **DENIED AS MOOT**.

3. Dean Boraas' Motion to Suppress Statements, Admissions, and Answers (ECF No. 21) be **DENIED**.

Dated: September 11, 2013.                                  s/ *Jeanne J. Graham*

                                                            JEANNE J. GRAHAM
                                                            United States Magistrate Judge

**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **September 26, 2013**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or if the district judge directs otherwise.